**James E. GROPPI, Petitioner,**

v.

**Jack LESLIE, Sheriff of Dane County, Respondent.**

**No. 69-C-241.**

United States District Court,
W. D. Wisconsin.

April 8, 1970.

See also D.C., 311 F.Supp. 765.

Percy L. Julian, Jr., Madison, Wis., James M. Shellow, Gilda B. Shellow, William M. Coffey, Robert H. Friebert, Milwaukee, Wis., for petitioner.

Sverre O. Tinglum, David Hanson, Asst. Attys. Gen., Madison, Wis., for respondent.

JAMES E. DOYLE, District Judge.

This is a petition for habeas corpus in which it is alleged that petitioner is in custody in violation of the Constitution of the United States. 28 U.S.C. § 2241(c) (3). A response has been filed. Petitioner has been admitted to bail pending a decision on his petition.

### Findings

Upon the basis of the entire record, I find:

On October 1, 1969, the Assembly, one of two houses of the Wisconsin state legislature, passed the following resolution (entitled "1969 Spec. Sess. Assembly Resolution"):

Citing James E. Groppi for contempt of the Assembly and directing his commitment to the Dane county jail.

In that James E. Groppi led a gathering of people on September 29, 1969, which by its presence on the floor of the Assembly during a meeting of the 1969 regular session of the Wisconsin Legislature in violation of Assembly Rule 10 prevented the Assembly from conducting public business and performing its constitutional duty; now, therefore, be it

Resolved by the Assembly, That the Assembly finds that the above-cited action by James E. Groppi constituted "disorderly conduct in the immediate view of the house and directly tending to interrupt its proceedings" and is an offense punishable as a contempt under Section 13.26(1) (b) of the Wisconsin Statutes and Article IV, Section 8 of the Wisconsin Constitution and therefore:

(1) Finds James E. Groppi guilty of contempt of the Assembly; and

(2) In accordance with Sections 13.26 and 13.27 of the Wisconsin Statutes, orders the imprisonment of James E. Groppi for a period of 6 months, or for the duration of the 1969 regular session, whichever is briefer, in the Dane county jail and directs the sheriff of Dane county to seize said person and deliver him to the jailer of the Dane county jail; and, be it further

Resolved, That the Assembly directs that a copy of this resolution be transmitted to the Dane county district attorney for further action by him under Section 13.27(2) of the Wisconsin Statutes; and, be it further

Resolved, That the attorney general is respectfully requested to represent the Assembly in any litigation arising herefrom.

A copy of the Assembly resolution was subsequently served upon petitioner and he was imprisoned in the Dane County jail upon the authority of the said resolution. Prior to being served with a copy of the resolution and imprisoned, petitioner was afforded no specification of the charge against him, no notice of any kind, and no hearing of any kind. Thereafter, petitioner unsuccessfully sought to obtain his release by commencing various actions and proceedings in the state courts and in this court. The Circuit Court for Dane County dismissed petitioner's application for a writ of habeas corpus. The Wisconsin Supreme Court thereafter denied petitioner's application for a writ of habeas corpus, and denied a motion for rehearing. State ex rel. Groppi v. Leslie, 44 Wis.2d 282, 171 N.W.2d 192 (1969).

### Wisconsin Constitution and Statutes

Article IV, Section 8, Wisconsin Constitution, provides, in part:

"Each house may determine the rules of its own proceedings, punish for contempt and disorderly behavior * * *."

Section 13.26, Wisconsin Statutes, provides, in part:

"(1) Each house may punish as a contempt, by imprisonment, a breach of its privileges or the privileges of its members * * * for * * * :
"* * *.
"(b) Disorderly conduct in the immediate view of the house and directly tending to interrupt its proceedings * * *.
"(2) The term of imprisonment a house may impose under this section shall not extend beyond the same session of the legislature."

Section 13.27, Wisconsin Statutes, provides:

"(1) Whenever either house of the legislature orders the imprisonment of any person for contempt under s. 13.26 such person shall be committed to the Dane county jail, and the jailer shall receive such person and detain him in close confinement for the term specified in the order of imprisonment, unless he is sooner discharged by the order of such house or by due course of law.
"(2) Any person who is adjudged guilty of any contempt of the legislature or either house thereof shall be deemed guilty also of a misdemeanor, and after the adjournment of such legislature, may be prosecuted therefor in Dane county, and may be fined not more than $200 or imprisoned not more than one year in the county jail."

### Contentions of Parties

The petition for habeas corpus asserts that respondent sheriff's custody of petitioner pursuant to the Assembly resolution is unlawful because:

"petitioner has been denied the right to be represented by counsel, the right to a trial or hearing of any kind, the right to compulsory process for the attendance of witnesses, the right to be informed of the nature and cause of the accusation against him, the right to confront his accusers and the right to present his defense to the alleged charges."

The petition further asserts that the Assembly action constitutes "a bill of attainder and/or pains and punishments"; that the Assembly resolution is invalid because the Assembly was not legally in either regular or special session either on the date of the alleged offense or on the date the resolution was passed; and that the remedies available to petitioner in the state courts are ineffective and inadequate to protect petitioner's rights.[1]

The respondent denies that petitioner's detention violates the Constitution of the United States, and moves to dismiss because the petition fails to state a claim upon which relief can be granted. No evidentiary hearing has been held. A hearing on issues of law has been held in this habeas corpus proceeding in conjunction with a hearing in a related three-judge case, Groppi v. Froehlich, D.C., 311 F.Supp. 765.

### Procedural due process

In Ex parte Terry, 128 U.S. 289, 313, 9 S.Ct. 77, 32 L.Ed. 405 (1888), this broad statement of the courts' contempt power appears:

> We have seen that it is a settled doctrine in the jurisprudence both of England and of this country, never supposed to be in conflict with the liberty of the citizen, that for direct contempts committed in the face of the court, at least one of superior jurisdiction, the offender may, in its discretion, be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof than its actual knowledge of what occurred; and that, according to an unbroken chain of authorities, reaching back to the earliest times, such power, although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions. Without

it, judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers charged with the duty of administering them.

This power in the courts has been reaffirmed frequently. United States v. Barnett, 376 U.S. 681, at 698, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964); In re Murchison, 349 U.S. 133, 134, 75 S.Ct. 623, 99 L.Ed. 942 (1955); Sacher v. United States, 343 U.S. 1, at 8, 72 S.Ct. 451, 96 L.Ed. 717 (1952); Fisher v. Pace, 336 U.S. 155, 69 S.Ct. 425, 93 L.Ed. 569 (1949); Cooke v. United States, 267 U.S. 517, 534–535, 45 S.Ct. 390, 69 L.Ed. 767 (1925); Ex parte Hudgings, 249 U.S. 378, 383, 39 S.Ct. 337, 63 L.Ed. 656 (1919); Ex parte Savin, 131 U.S. 267, 277, 9 S.Ct. 699, 33 L.Ed. 150 (1889). See Rule 42(a), Federal Rules of Crim. Proc.; 18 U.S.C. §§ 401, 402.

Commenting upon Ex parte Terry 60 years later, the Court emphasized that it had "recognized that such departure from the accepted standards of due process was capable of grave abuses, and for that reason gave no encouragement to its expansion beyond the suppression and punishment of court-disrupting misconduct which alone justified its exercise." In re Oliver, 333 U.S. 257, 274, 68 S.Ct. 499, 92 L.Ed. 682 (1948). The Court continued (333 U.S. 274–276, 68 S.Ct. at 508):

> That the holding in the Terry case is not to be considered as an unlimited abandonment of the basic due process procedural safeguards, even in contempt cases, was spelled out with emphatic language in Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767, a contempt case arising in a federal district court. There it was pointed out that for a court to exercise the extraordinary but narrowly limited power to punish for contempt

---

1. Subsequent to the filing of the petition for habeas corpus in this proceeding in this court, the Supreme Court of Wisconsin denied a petition for habeas corpus. It is conceded that petitioner has now exhausted his state remedies with respect to those issues raised by his petition in the Wisconsin Supreme Court and those issues acted upon by that Court. 28 U.S.C. § 2254.

without adequate notice and opportunity to be heard, the court-disturbing misconduct must not only occur in the court's immediate presence, but that the judge must have personal knowledge of it acquired by his own observation of the contemptuous conduct. This Court said that knowledge acquired from the testimony of others, or even from the confession of the accused, would not justify conviction without a trial in which there was an opportunity for defense. Furthermore, the Court explained the *Terry* rule as reaching only such conduct as created "an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public" that, if "not instantly suppressed and punished, demoralization of the court's authority will follow." Id. at 536, 45 S.Ct. 390.

Except for a narrowly limited category of contempts, due process of law as explained in the *Cooke case* requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent "demoralization of the court's authority" before the public. If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires, according to the *Cooke* case, that the accused be accorded notice and a fair hearing as above set out.

In Holt v. Virginia, 381 U.S. 131, 85 S.Ct. 1375, 14 L.Ed.2d 290 (1965), Offutt v. United States, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954), and Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925), the Court has demonstrated how narrowly circumscribed is the area in which summary power may be exercised by a court.[2]

■ I turn to the subject of contempt of a legislative body. That agreeably to the Constitution of the United States a legislative house (hereinafter "legislature") may impose a jail sentence for contempt of the legislature is long established and has been reaffirmed in modern times. Jurney v. MacCracken, 294 U.S. 125, 55 S.Ct. 375, 79 L.Ed. 802 (1935).[3] However, in Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 208, 5 L.Ed. 242 (1821), Kilbourn v. Thompson, 103 U.S. 168, 173, 26 L.Ed. 377 (1880), Marshall v. Gordon, 243 U.S. 521, 532, 37 S.Ct. 448, 61 L.Ed. 881 (1917), McGrain v. Daugherty, 273 U.S. 135, 153, 47 S.Ct. 319, 71 L.Ed. 580 (1927), and Jurney v. MacCracken, *supra,* at 144, 55 S.Ct. 375, before being cited for contempt, the accused had been brought before the House or Senate to answer the charge or to purge himself. I am aware of no decision of the Supreme Court of the United States or of the Court of Appeals for this circuit in a case in which the contumacious behavior was said to have been disorderly conduct in the im-

---

2. Oklahoma has required, by its Constitution, Art. 2, § 25, that an opportunity to be heard must always precede imposition of a penalty or punishment for contempt. This requirement applies even to contemptuous conduct in the immediate view of the judge. Sullivan v. State, 419 P.2d 559 (Okla.Ct. of Crim.App.1966) ; Young v. State, 275 P.2d 358 (Okla.Ct. of Crim.App.1954).

3. I consider hereinafter this petitioner's contention that the Assembly resolution under which he is confined is a bill of attainder or a bill of pains and penalties.

mediate view of the legislature and directly tending to interrupt its proceedings, nor any in which the legislature undertook to impose punishment summarily. I consider the question raised here to be an open question.

The petitioner has neither denied nor admitted in this court that he engaged in the conduct described in the Assembly resolution: namely, that he led a gathering of people which by its presence on the floor of the Assembly prevented the Assembly from conducting public business and performing its constitutional duty.[4] The Supreme Court of Wisconsin has concluded, implicitly if not explicitly, that such conduct violates Sec. 13.26, Wis.Stat., which prohibits "disorderly conduct in the immediate view of the house and directly tending to interrupt its proceedings"; this construction of the state statute is binding on me.[5] I conclude that if such conduct had occurred in a courtroom in the presence of a judge, "where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court" (In re Oliver, 333 U.S. at 275, 68 S.Ct. at 509), the judge would have been empowered to impose a jail sentence summarily. The precise question is whether such conduct in a legislative chamber may be punished summarily by a legislature by confinement in jail.[6] I conclude that such punishment may not be imposed by a legislature without at least providing the accused with some minimal opportunity to appear and to respond to a charge.

The Assembly resolution passed October 1 recites that petitioner engaged in certain acts September 29. The question arises whether "all of the essential elements of the misconduct" occurred "under the eye of" the members who voted affirmatively October 1, and were "actually observed" by those members. If not, the parallel to the court's summary powers is destroyed. It is a question of fact whether the petitioner's acts on September 29 were observed by a specific member who voted affirmatively two days later. How this issue of fact is to be resolved presents a problem. The text of the October 1 resolution is silent on the point, and the record in this court sheds no light on it.[7] To impose

4. Whether the Assembly was in regular session or special session on the date of the alleged offense or on the date the contempt resolution was passed is a matter of state law. In a habeas corpus proceeding here, petitioner may challenge the lawfulness of his custody only on the ground that it is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). United States ex rel. Greer v. Pate, 393 F.2d 44 (7th Cir. 1968), cert. den. 393 U.S. 890, 89 S.Ct. 209, 21 L.Ed.2d 168 (1968).

5. In its opinion, the Supreme Court of Wisconsin, apparently by an exercise of judicial notice, referred to numerous events and circumstances which were said to have occurred in and around the State Capitol September 29 and thereafter. No evidentiary hearing had been held by that Court, or at its direction, and none has been held in this court. So far as the events of September 29 in the Assembly chamber are concerned, the only version of the facts is that contained in the Assembly Resolution of October 1. Obviously, the incident and its aftermath were abundantly reported by the news media. It may appear precious for a court to refrain from accepting accounts of such an incident which are generally accepted by the public. For some purposes, it may be practical for a court to accept them. For example, it should not be necessary for a court to receive evidence that extensive rioting had occurred in a community prior to the particular events involved in a case. But the central issue in this case is whether, in circumstances such as these, a specific person who is said by the press, radio, or television to have engaged in certain specific acts may be imprisoned without those minimal procedures necessary to insure against mistaken impressions.

6. Clearly, so far as the Constitution of the United States is concerned, the legislature, or members or officers or agents thereof, are free to remove from the house one engaging in such conduct and for a reasonable time to bar him from reentering. The issue here relates to imposing a term in jail.

7. Compare Rule 42(a), Federal Rules of Criminal Procedure: "A criminal con-

the burden of proof upon the petitioner would be unreasonable; it would probably require him to take a discovery deposition of each member of the house (or at least of a number of those voting affirmatively October 1 which number would constitute a majority of those present and voting). When there is involved a power so extreme that its use by a court has been limited with intense care, the validity of its use by a legislature may not be made to depend upon a presumption of fact concerning whether the September 29 acts were observed by the October 1 voters.

However, even if the Assembly record itself or evidence presented in a court later, were to establish that there were present in the Assembly chamber September 29 a sufficient number of those members voting affirmatively October 1, I would conclude that the due process clause of the Fourteenth Amendment would forbid these members to impose a jail term upon the accused without first providing him with a reasonable opportunity to respond to a stated charge.

In my view, it is an anachronism that a judge should be permitted today to impose a jail term upon a contemnor without first providing him with a reasonable opportunity to respond to a stated charge. The doctrine with respect to courts is of ancient origin. Even in its present restricted and battered state, it is an unseemly aberration in a mosaic of procedural rights guaranteed by the due process clauses of the Fifth and Fourteenth Amendments in many less compelling situations. But the doctrine does enjoy some slender roots in practical common experience. That is, when by the exercise of his own senses, the judge is a witness to the totality of the incident—the time at which it occurred, the place at which it occurred, the immedi-

ate history of the situation in which it occurred—it is not wholly unreasonable to conclude that the room for error in his perception and evaluation of the incident is slight and that intermediate procedures may be dispensed with. Practical common experience affords no such support for a similar conclusion with respect to the room for error in perception and evaluation by a large group of human beings, whether judges, legislators, or others. The physical contours of most legislative chambers, the comings and goings of the members, and the diffusion of attention of the members, among many factors, render it improbable that all of the members present would share a uniform perception and evaluation of an incident, upon the basis of which each member might then decide upon an appropriate response. This would be true even at a moment when the legislature is actively in session, discussing the business before it, and more true at times at which it is commencing or terminating its work. The question is not whether these attributes of a legislature altogether prevent it from imposing a jail sentence upon a contemnor. The question is whether these attributes so distinguish a legislature from a court that the legislature must be prevented from visiting such punishment upon a contemnor with such swiftness and abruptness. I conclude that the room for error inherent in the response of a large group is so great as to require that it observe some minimal procedures before it invokes this power.[8]

There are other reasons which lead me to this conclusion.

Unlike many courts of record, frequently if not typically no verbatim written record of legislative proceedings exists. If the availability of judicial review of the contempt citation is as-

tempt may be punished summarily if a judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court."

8. Perhaps similar considerations may affect the summary powers of courts con-

sisting of more than one judge. However this may be, there remains a significant contrast between a court consisting of nine members, and the Wisconsin Assembly consisting of one hundred.

sumed, it would nevertheless be severely crippled by the absence of a definitive record of the incident.

Moreover, the nature of available judicial review is extremely unclear. In its opinion in the present case, the Supreme Court of Wisconsin stated (44 Wis.2d 282, at 297, 171 N.W.2d 192, 198):

> We do not hold the action of the legislature is not reviewable in our courts and subject to correction. It is expressly provided in sec. 13.27, Stats., the contemnor may be discharged before his time by "the due course of law." The petitioner has not sought a hearing in this court or any court on the merits of the contempt issue. He has not offered any defense or denied his acts amounted to a contempt although this court in this proceeding allowed him to amend his complaint to present any matter he wished. The only issues presented dealt primarily with procedure, not with the issue of his innocence or with the merits of any defense. We think due process is satisfied when the courts are open to determine promptly any question concerning the merits of a contempt found to have been committed by summary process before a legislature for contempt committed in its presence.

And the court stated further (at 299, 171 N.W.2d at 199):

> The only practical way a contempt in the presence of the legislature can be handled is by summary process reviewable by the judiciary. We think

it is neither a necessary nor an acceptable construction of the constitution that a trial or a hearing be engrafted upon the legislative contempt power when the judiciary will immediately review the action of the legislature and has the power to grant adequate and appropriate relief.

 Although this statement is somewhat surprising in the light of the limitations upon the historic function of the writ of habeas corpus,[9] I am bound to accept it as an authoritative statement that one who has been imprisoned by the legislature for contempt of the legislature may obtain from a Wisconsin court a review of the "merits" of the legislative action. However, the nature and extent of this review is not explained. It is not clear whether the accused is entitled to a trial *de novo* on the underlying factual issues relating to his conduct, or whether the review is comparable to judicial review of an administrative decision, or whether the burden of persuasion rests with the accused petitioner or with the respondent. If there is indeed to be a review of the "merits", it appears that a trial of the facts would be necessary, since no trial has as yet occurred, and since there is no written record of the underlying events to which a court might look. Assuming, however, that these difficult matters could be resolved satisfactorily, the initial injustice would not be reached; the hearing, whatever it may be, would be afforded after the imposition of the punishment and not before.[10]

9. In *In re Falvey and Kilbourn*, 7 Wis. *630 (1858), in a habeas corpus proceeding to test the lawfulness of a confinement imposed by the Assembly, the Court stated (at *639) that it had no appellate power over the Assembly when the Assembly had acted within its jurisdiction, and that the Court could not "suspend [the Assembly's] judgment because it has made a mistake or abused its discretion in the premises." In *State ex rel. Reynolds v. County Court*, 11 Wis.2d 560, 573, 105 N.W.2d 876, 883 (1960), it was emphasized that in Wisconsin, even with respect to contempt of court, habeas corpus is "restricted to the question of the jurisdiction of the committing court" and that errors "in the exercise of jurisdiction" are not reviewable. See 39 Am. Jur.2d Habeas Corpus, § 28, pp. 198–201.

10. Bail was refused to this petitioner both by the Circuit Court for Dane County and the Supreme Court of Wisconsin. In an appeal from a conviction for *contempt of court*, sentence may be stayed and bail granted. *Sacher v. United States*, 343 U.S. 1, 12–13, 72 S.Ct. 451, 96 L.Ed. 717 (1952). On the other hand, bail is rarely granted in habeas corpus proceedings. *United States ex rel. Epton v. Nenna*, 281 F.Supp. 388 (S.D.N.Y. 1968).

I do not consider that affording petitioner some minimal opportunity to appear and to respond to a charge would constitute an undue burden on the legislature. The proceeding would probably resemble the contempt proceedings in the United States Congress discussed in Kilbourn v. Thompson and Jurney v. MacCracken, *supra*, in which the accused was ordered to appear before the bar of the House or Senate and to show cause why he should not be punished for contempt.[11]

In its opinion denying habeas corpus to this petitioner, the Supreme Court of Wisconsin expressly declined to draw an analogy between courts and legislatures with respect to the power to punish direct contempt. 44 Wis.2d at 295, 171 N.W.2d 192. The Court summarized the distinction between the two powers as follows (44 Wis.2d at 296, 171 N.W.2d at 198):

> Under the judicial contempt power, a contemnor is imprisoned, not to prevent him from continuing to interfere with the judicial function of the court in the future but to punish him for having completed a contemptuous act in the presence of the court. This is punishment necessary to maintain the dignity, decorum, and respect for the court. This objective admittedly is also found in punishment for some crimes. In contrast, the legislative power of contempt, restricted as it is to prevent the contemnor from interfering with the functions of the legislature, is more in the nature of what is known as civil contempt. Its function is not to punish for a past deed but to prevent threatened conduct which interferes with the proper function of the legislative body.

Whatever the validity of this view in terms of the sources and early history of the contempt power, or in terms of justifications for its existence, I cannot agree that it accurately describes the uses of the power. On the one hand, courts impose sanctions for contempt for the purpose of preventing further interference with their function, as well as for the purpose of punishing the offender for a completed act. For example, in Fisher v. Pace, 336 U.S. 155, 69 S.Ct. 425, 93 L.Ed. 569 (1949), the trial judge interrupted a lawyer who had persisted in making improper argument to the jury, and ordered him to be removed immediately from the courtroom and placed in jail. Indeed, in Sacher v. United States, 343 U.S. 1, 10, 72 S.Ct. 451, 96 L.Ed. 717 (1952), in discussing whether a court might summarily punish a lawyer during a trial or await the trial's end, the Court said that "[t]he overriding consideration is the integrity and efficiency of the trial process * *." On the other hand, legislatures impose sanctions for the purpose of punishing for a past deed, as well as for the purpose of preventing further interference with the legislative function. In In re Falvey and Kilbourn, 7 Wis. *630, 634 (1858), the Assembly sentenced the contemnor to jail for ten days "as punishment for the contempt * * * in failing to appear before the joint investigating committee." In Jurney v. MacCracken, 294 U.S. 125, 147–150, 55 S.Ct. 375, 79 L.Ed. 802 (1935), it was pointedly held that a legislature may impose punishment for contempt solely as punishment, after the legislative obstruction has been removed, or after the removal of the obstruction has become impossible. Moreover, in the present case, the resolution was adopted by the legislature two days after the acts complained of,

---

11. The report of In re Falvey and Kilbourn, 7 Wis. *630 (1858), involving a contempt of the Wisconsin legislature, reveals (at *633–634) that the alleged contemnor was arrested on February 9, "arraigned before the said Assembly" on February 10, that the Assembly "thereupon" declared him to be in contempt, that he prayed to be heard by counsel in answer (which was refused), that he gave an answer in writing ("which the Assembly declared by resolution to be insufficient"), and that on February 11 the Assembly resolved that he was to be confined for ten days.

and without a hearing even for the purpose of determining how long a period of confinement would be necessary to prevent the petitioner from causing further obstruction of the legislative function.

For the reasons stated, I conclude that the petitioner has been denied procedural rights guaranteed him by the due process clause of the Fourteenth Amendment, and that he is entitled to the relief he seeks.

### Bill of Attainder

■ Petitioner contends that the procedure whereby he was imprisoned constitutes a bill of attainder or a bill of pains and penalties. Art. I, § 10, clause 1, of the Constitution provides: "No State shall * * * pass any Bill of Attainder * * *." A bill of attainder is a legislative act sentencing a person to death for an alleged crime without a judicial trial, while a bill of pains and penalties imposes some milder punishment. Both types are included in the constitutional prohibition on bills of attainder. Black's Law Dictionary 162 (4th ed. 1951).

In view of the conclusion I have reached, that petitioner is entitled to be released because he has been denied procedural due process, it is not strictly necessary to consider his contention with respect to attainder. However, if his contention in this respect were to be upheld, it might be that the legislature would be wholly deprived of power to impose punishment upon a contemnor, with or without due process. To make clear that I intend no such consequence, I add these comments.

■ There is some similarity between bills of attainder, which constitute punishment by a legislature without judicial safeguards, and legislative contempt judgments, which can also constitute punishment by a legislature without most judicial safeguards. However, the legislative contempt power has a long history, has been upheld numerous times during that history, Jurney v. Mac-Cracken, *supra*, 294 U.S. at 148–150, 55 S.Ct. 375, 79 L.Ed. 802, and has never been limited or denied because it allegedly violates the constitutional prohibition against bills of attainder. The bill of attainder defense to legislative contempt citations "has not been seriously accepted by the Supreme Court, though Justices Black and Douglas have consistently raised the point in dissent." R. Goldfarb, The Contempt Power 223 (1963). See Barenblatt v. United States, 360 U.S. 109, 153, 79 S.Ct. 1081, 3 L.Ed.2d 1115 *et seq.* (1959) (dissenting opinion).

I conclude that the prohibition on bills of attainder, on the one hand, and the legislative contempt power, on the other, have been permitted by the Supreme Court of the United States to co-exist for so many years that I am not free now to hold that the survival of the first demands the extinction of the second.

### Right to a jury trial

The petition here does not assert specifically that custody is unlawful because petitioner was deprived of a jury trial. However, it does allege that he was denied the right to a trial or hearing of any kind; the right to a jury trial was asserted in oral argument; and the Supreme Court of Wisconsin expressly considered whether petitioner had been entitled to a jury trial and decided that he had not. 44 Wis.2d at 298–299, 171 N.W.2d 192. I consider that petitioner has exhausted his state remedy with respect to the jury trial issue, and that he has sufficiently asserted it here. However, I express no opinion with respect to the merits of this contention.

I have concluded that in every case of contempt of the legislature, certain minimal requirements of procedural due process must be observed before the contemnor may be imprisoned. I do not consider these limitations upon the legislature oppressive. First, the minimal requirements of procedural due process can readily be provided with little delay. Second, the ability of the legislature to

protect its proceedings from disruption lies primarily in its undoubted power to expel any disrupter immediately, and to employ appropriate police action to prevent further disruption.

## ORDER

For the reasons stated above, and on the basis of the entire record herein, the petition for habeas corpus is hereby granted and respondent's motion to dismiss is hereby denied. The order of October 11, 1969, releasing petitioner on bail is vacated, and it is hereby ordered that petitioner be released from any further custody or restraint pursuant to the resolution adopted by the Assembly of the State of Wisconsin on October 1, 1969.