**Father James E. GROPPI, Plaintiff,**

v.

**Harold FROEHLICH, individually and as Speaker of the Wisconsin Assembly and as a representative of a class known as "Members of the Wisconsin Assembly"; James Boll, individually and as District Attorney of Dane County, Wisconsin; Vernon T. Leslie, individually and as Sheriff of Dane County, Wisconsin, Defendants.**

No. 69–C–235.

United States District Court,
W. D. Wisconsin.

April 8, 1970.

See also, D.C., 311 F.Supp. 772.

Percy L. Julian, Jr., Madison, Wis., James M. Shellow, Gilda B. Shellow,

William M. Coffey, Robert H. Friebert, Milwaukee, Wis., for plaintiff.

Sverre O. Tinglum, Asst. Atty. Gen., David Hanson, Asst. Atty. Gen., Madison, Wis., for defendants.

Before FAIRCHILD, Circuit Judge, and DOYLE and REYNOLDS, District Judges.

JAMES E. DOYLE, District Judge:

This is an action in which the plaintiff attacks the validity, under the Constitution of the United States, of § 13.26 and § 13.27 of the Wisconsin Statutes, and in which he also alleges that §§ 13.-26 and 13.27, even if valid, are being invoked for the unlawful purpose of depriving him of certain rights secured to him by the Constitution of the United States. The plaintiff seeks a judgment declaring that §§ 13.26 and 13.27 violate the Constitution of the United States, a preliminary and permanent injunction restraining the defendants from enforcing or executing §§ 13.26 and 13.27, and an injunction restraining the defendants from refusing to release plaintiff forthwith from imprisonment.

## Findings

Defendants have filed their answer to the complaint herein, and a hearing has been held by the three-judge court on the merits of the complaint. Upon the basis of the entire record herein, we find:

On October 1, 1969, the Assembly, one of two houses of the Wisconsin state legislature, passed the following resolution (entitled "1969 Spec.Sess. Assembly Resolution"):

Citing James E. Groppi for contempt of the Assembly and directing his commitment to the Dane county jail.

In that James E. Groppi led a gathering of people on September 29, 1969, which by its presence on the floor of the Assembly during a meeting of the 1969 regular session of the Wisconsin Legislature in violation of Assembly Rule 10 prevented the Assembly from conducting public business and performing its constitutional duty; now, therefore, be it

Resolved by the Assembly, That the Assembly finds that the above-cited action by James E. Groppi constituted "disorderly conduct in the immediate view of the house and directly tending to interrupt its proceedings" and is an offense punishable as a contempt under Section 13.26(1) (b) of the Wisconsin Statutes and Article IV, Section 8 of the Wisconsin Constitution and therefore:

(1) Finds James E. Groppi guilty of contempt of the Assembly; and

(2) In accordance with Sections 13.26 and 13.27 of the Wisconsin Statutes, orders the imprisonment of James E. Groppi for a period of 6 months, or for the duration of the 1969 regular session, whichever is briefer, in the Dane county jail and directs the sheriff of Dane county to seize said person and deliver him to the jailer of the Dane county jail; and, be it further

Resolved, That the Assembly directs that a copy of this resolution be transmitted to the Dane county district attorney for further action by him under Section 13.27(2) of the Wisconsin Statutes; and, be it further

Resolved, That the attorney general is respectfully requested to represent the Assembly in any litigation arising herefrom.

A copy of the Assembly resolution was subsequently served upon petitioner and he was imprisoned in the Dane County jail upon the authority of the said resolution. Prior to being served with a copy of the resolution and imprisoned, petitioner was afforded no specification of the charge against him, no notice of any kind, and no hearing of any kind. Thereafter, petitioner unsuccessfully sought to obtain his release by commencing various actions and proceedings in the state courts and in this court. The Circuit Court for Dane County dismissed petitioner's application

for a writ of habeas corpus. The Wisconsin Supreme Court thereafter denied petitioner's application for a writ of habeas corpus, and denied a motion for rehearing. State ex rel. Groppi v. Leslie, 44 Wis.2d 282, 171 N.W.2d 192 (1969). Plaintiff also filed a petition for habeas corpus in this court. The petition has been granted today in Groppi v. Leslie, W.D.Wis., 311 F.Supp. 772.

### Wisconsin Constitution and Statutes

Article IV, Section 8, Wisconsin Constitution, provides, in part:

"Each house may determine the rules of its own proceedings, punish for contempt and disorderly behavior * * *."

Section 13.26, Wisconsin Statutes, provides, in part:

"(1) Each house may punish as a contempt, by imprisonment, a breach of its privileges or the privileges of its members * * * for * * *:

"* * *

"(b) Disorderly conduct in the immediate view of the house and directly tending to interrupt its proceedings. * * *

"(2) The term of imprisonment a house may impose under this section shall not extend beyond the same session of the legislature."

Section 13.27, Wisconsin Statutes, provides:

"(1) Whenever either house of the legislature orders the imprisonment of any person for contempt under s. 13.-26 such person shall be committed to the Dane county jail, and the jailer shall receive such person and detain him in close confinement for the term specified in the order of imprisonment, unless he is sooner discharged by the order of such house or by due course of law.

"(2) Any person who is adjudged guilty of any contempt of the legislature or either house thereof shall be deemed guilty also of a misdemeanor, and after the adjournment of such legislature, may be prosecuted therefor in Dane county, and may be fined not more than $200 or imprisoned not more than one year in the county jail."

### Contentions of Parties

The question of the lawfulness of plaintiff's confinement pursuant to the Assembly resolution of October 1 has been determined by the single-judge court in the companion habeas corpus proceeding (311 F.Supp. 772).[1] We confine ourselves to the issues related to a possible "second confinement," under the provisions of § 13.27(2), Wis.Stat.

With respect to these issues, plaintiff contends that the defendants, acting under color of Wisconsin law, threaten to deprive him of rights, privileges, or immunities secured to him by the Constitution of the United States. 42 U.S.C. § 1983. He alleges that he has attempted to express his ideas and beliefs on public issues of vital concern; that he has sought to exercise rights such as freedom of speech, assembly, association and petition for a redress of grievances, all guaranteed under the First and Fourteenth Amendments to the United States Constitution; and that defendants threaten to deprive him of these rights by the application of §§ 13.26 and 13.27, Wis.Stats., and the Assembly resolution of October 1, which statutes and resolu-

---

1. "Whatever its other functions, the great and central office of the writ of habeas corpus is to test the legality of a prisoner's current detention." Walker v. Wainwright, 390 U.S. 335, 336, 88 S.Ct. 962, 963, 19 L.Ed.2d 1215 (1968). The requirements of the habeas corpus statutes, 28 U.S.C. § 2241 *et seq.*, may not be avoided by stating the claim in the language of the Civil Rights Act, 42 U.S.C. § 1983. Gaito v. Strauss, 368 F.2d 787, 788 (3d Cir. 1966), cert. den., 386 U.S. 977; Johnson v. Walker, 317 F.2d 418 (5th Cir. 1963); Martin v. Roach, 280 F.Supp. 480 (S.D.N.Y.1968); May v. Peyton, 268 F.Supp. 928 (W.D.Va.1967); Davis v. State of Maryland, 248 F.Supp. 951 (D.Md.1965); Threatt v. State of North Carolina, 221 F.Supp. 858 (W.D. N.C.1963).

tion, plaintiff contends, are unconstitutional on their face or as applied, or both. Plaintiff contends that §§ 13.26 and 13.27 and the resolution are vague and indefinite; that they are overbroad and encompass clearly protected activity; and that they are susceptible of sweeping and improper application to protected activity.

Plaintiff also contends that §§ 13.26 and 13.27 and the Assembly resolution violate the prohibition against bills of attainder set forth in Article I, § 10, clause 1, of the United States Constitution; violate the principle of separation of powers underlying both the United States and Wisconsin Constitutions; violate the Sixth and Fourteenth Amendments because they provide that plaintiff may be punished without the right to a trial by jury and without the right to assistance of counsel, compulsory process for the attendance of witnesses, confrontation of witnesses, and the right to be informed of the nature of the charge against him; violate the Fifth and Fourteenth Amendments because they permit plaintiff to be placed twice in jeopardy for the same alleged offense; and violate the Thirteenth Amendment because they make plaintiff a slave and an involuntary servant of the state without being duly convicted of a crime. He also contends that said sections and the resolution have been and will be enforced for the unlawful purpose of intimidating and harassing him in the exercise of his First Amendment rights.

Defendants generally deny all of these contentions.

## Jurisdiction

■ The Assembly resolution "directs that a copy of [it] be transmitted to the Dane County district attorney for further action by him under Section 13.-27(2). * * *" Section 13.27(2) provides that any person "who is adjudged guilty of any contempt of the legislature or either house thereof shall be deemed guilty also of a misdemeanor, and after the adjournment of such legislature, may be prosecuted therefor in Dane county, and may be fined not more than $200 or imprisoned not more than one year in the county jail." The resolution does not direct the Dane County district attorney to prosecute plaintiff; it authorizes him to take "further action" under § 13.27(2). Section 13.27(2) in turn allows the district attorney to decide whether to prosecute plaintiff, since the section states only that he "may be prosecuted". However, the resolution (by which the Assembly "finds" plaintiff guilty of contempt), and § 13.27(2), present a *direct and real threat to plaintiff*, in view of the Assembly's request. The controversy is justiciable. Jurisdiction is present. 28 U.S.C. § 1343(3).

## Procedural Due Process

■ Plaintiff contends that under § 13.27(2) one who is "adjudged guilty" of a contempt of the legislature "shall be deemed guilty also of a misdemeanor"; that plaintiff has been "adjudged guilty" by the Assembly and is presently "deemed guilty also of a misdemeanor"; that he may be "prosecuted therefor" in a court by a complaint which alleges simply that he has been "adjudged guilty" by the Assembly; that the prosecutor will be required only to prove this allegation; that plaintiff has no defense to such a prosecution; and that upon conviction he may be imprisoned for a year. So construed, § 13.27(2) would be invalid. The prison term to which plaintiff could be sentenced by a court would be imposed at the end of a series of steps which would not have included a trial of the factual issue whether he did perform the contemptuous acts or whether there was an excuse for the acts. More specifically, for the reasons stated in the opinion entered today in the habeas corpus proceeding (311 F. Supp. 772), and which this three-judge court adopts for the purpose of this case (69–C–235) as well, before plaintiff was "found" by the Assembly to be guilty of a contempt of the legislature, he was not accorded the minimal elements of due

process guaranteed by the Fourteenth Amendment. Under § 13.27(2), if construed as suggested by plaintiff above, this infirmity would not have been corrected before imposition of punishment by the court.

Section 13.27(2) has not been construed by the Supreme Court of Wisconsin. However, in State ex rel. Groppi v. Leslie (No. 128–425, Oct. 8, 1969), the Circuit Court for Dane County has stated:

> [P]laintiff asserts that sec. 13.27(2) permits of a prosecution and adjudication of one charged with contempt of the legislature in a summary manner. * * * The word "adjudged" implies the judgment of a court of competent jurisdiction, not a legislative order. The word "prosecuted" implies the procedure customarily followed in misdemeanor cases. It also implies that the District Attorney has discretion to prosecute or refuse to prosecute and that on a prosecution under Sec. 13.27(2) the District Attorney must initiate in the usual way by information, the accused must be permitted to plead, appear by counsel and be heard on a trial of the facts, and the court or jury be permitted to determine the guilt of the accused and a judgment entered thereon with a penalty imposed only after a finding of guilt.

We agree, particularly because this construction, which the language readily permits, saves the statute from invalidity as a denial of procedural due process.[2]

*Vagueness and Overbreadth*

In a prosecution under § 13.27(2), it will be necessary for the state to prove that plaintiff has been guilty of "disorderly conduct in the immediate view of the house and directly tending to interrupt its proceedings." § 13.26(1) (b).

The phrase "disorderly conduct" in § 13.26(1) (b) is certainly broad and could conceivably extend to types of activity protected by the First Amendment. The allegation that § 13.26(1) (b) is vague and overbroad is not frivolous or insubstantial. Plaintiff has standing to challenge the validity of § 13.26(1) (b) on the ground of overbreadth whether or not he actually engaged in constitutionally protected activities. The Supreme Court has stated in Dombrowski v. Pfister, 380 U.S. 479, 486–487, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965):

> [W]e have consistently allowed attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. Thornhill v. State of Alabama, 310 U.S. 88, 97–98, 60 S.Ct. 736, 741–742, 84 L.Ed. 1093; N.A.A. C.P. v. Button, 371 U.S. 415, at 432–433, 83 S.Ct. 328, at 337–338, 9 L.Ed. 2d 405; cf. Aptheker v. Secretary of State, 378 U.S. 500, 515–517, 84 S.Ct. 1659, 1668–1669, 12 L.Ed.2d 992; United States v. Raines, 362 U.S. 17, 21–22, 80 S.Ct. 519, 522–523, 4 L.Ed. 2d 524. We have fashioned this exception to the usual rules governing

2. Title 2, U.S.C. § 192 provides that any person summoned as a witness by a Congressional committee who refuses to answer questions pertinent to the inquiry "shall be deemed guilty of a misdemeanor." "In enacting 2 U.S.C. § 192, the Congress invoked the aid of the federal judicial system to protect itself from contumacious conduct." Deutch v. United States, 367 U.S. 456, 471, 81 S.Ct. 1587, 1595, 6 L.Ed.2d 963 (1961). Nevertheless, a conviction under 2 U.S.C. § 192 cannot be obtained on the theory that the alleged contemnor is "deemed guilty" because Congress has certified to the court that he refused to answer certain questions. Defendants prosecuted under 2 U.S.C. § 192 must be accorded all rights guaranteed to defendants in other criminal cases. Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); Deutch v. United States, *supra*; Quinn v. United States, 349 U.S. 155, 75 S.Ct. 668, 99 L.Ed. 964 (1955).

standing, see United States v. Raines, *supra*, because of the "* * * danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application." N.A. A.C.P. v. Button, *supra*, at 433, 83 S. Ct. 328, at 338. If the rule were otherwise, the contours of regulation would have to be hammered out case by case—and tested only by those hardy enough to risk criminal prosecution to determine the proper scope of regulation.

See Soglin v. Kauffman, 418 F.2d 163, 166 (7th Cir. 1969).

■ In pressing his vagueness and overbreadth arguments, plaintiff refers to the component phrases and clauses of § 13.26(1) (b)—"disorderly conduct," "in the immediate view of the house," and "directly tending to interrupt its proceedings"—and argues that each is vague or overbroad. But it is not enough that the conduct is "disorderly," or that it be "in the immediate view of the house," or that it "directly [tend] to interrupt its proceedings." "Disorderly" is indeed an unfortunately vague and broad term. But in the context of the modifying phrases of § 13.26(1) (b), it is rescued from invalidity.

Relying upon decisions such as N.A. A.C.P. v. Button, 371 U.S. 415, 432, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), plaintiff contends that we must consider possible applications of § 13.26(1) (b) "in other factual contexts beyond that at bar." Plaintiff suggests several such possible applications in asserting that § 13.26(1) (b) can be used to inhibit free speech and assembly.

Plaintiff contends that speeches which could be heard by legislators, or a protest march on the sidewalk surrounding the capitol, which could be seen by them, could be punished under the statute; and that one carrying picket signs or distributing handbills in the vicinity of the legislative chambers which could be visible to and offensive to legislators could be punished under the statute.

We believe that this construction of § 13.26(1) (b) is not reasonably to be anticipated. The required view of the legislators must be immediate, and the tendency to interruption must be direct. The objective of § 13.26(1) (b) is obviously to punish physical interference with the legislature in its proceedings. The language is not so vague and broad as to obscure this obvious objective. The objective itself is clearly constitutional. "Fair use" of the opportunity for public discussion and demonstration may not be denied. Stromberg v. California, 283 U.S. 359, 369, 51 S.Ct. 532, 75 L.Ed. 1117 (1931); Edwards v. South Carolina, 372 U.S. 229, 238, 83 S. Ct. 680, 9 L.Ed.2d 697 (1963). However, it has been consistently recognized that there are places in which and times at which speeches and meetings and demonstrations may be prohibited. Adderly v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1969) (and see dissenting opinion, at 54). Section 13.-26(1) (b) declares that a legislative chamber is such a place and that the duration of legislative proceedings is such a time; in neither respect is it unreasonable.

We note the similarity between § 13.-26(1) (b) and Wisconsin's disorderly conduct statutes. Section 947.01, Wis. Stats., reads:

"Disorderly conduct. Whoever does any of the following may be fined not more than $100 or imprisoned not more than 30 days:

(1) In a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud, or otherwise disorderly conduct under circumstances in which such conduct tends to cause or provoke a disturbance * * *."

The alleged vagueness and overbreadth of § 947.01 was the issue raised in Zwicker v. Boll, 270 F.Supp. 131 (W. D.Wis.1967) (3-judge court), aff'd per curiam, 391 U.S. 353, 88 S.Ct. 1666, 20 L.Ed.2d 642 (1968). The *Zwicker* court held that § 947.01 was not unconstitu-

tional on its face. 270 F.Supp. at 136. Soglin v. Kauffmann, 286 F.Supp. 851 (W.D.Wis.1968) (3-judge court), again presented a challenge to § 947.01 on grounds of vagueness and overbreadth. The same panel which had decided *Zwicker* rejected this challenge and concluded that Supreme Court affirmance of *Zwicker* had been on the basis that Wisconsin's disorderly conduct statute "was not, on its face, void on grounds of vagueness or overbreadth." 286 F.Supp. at 854. Section 13.26(1) (b) is no more open, and perhaps less open, to charges of vagueness and overbreadth than § 947.01.

### Prosecutorial Abuse

The complaint contains no more than wholly conclusory allegations that the threatened prosecution of plaintiff under § 13.27(2) is for the unlawful purpose of intimidating and harassing him in the exercise of his First Amendment rights, or that such prosecution will be commenced in bad faith and without any hope of ultimate success. We have stated that plaintiff must receive full procedural due process in the threatened prosecution under § 13.27(2). "Any chilling effect on [plaintiff's right] of protest and expression that flows from good-faith enforcement of this valid statute would not, of course, constitute that enforcement an impermissible invasion of protected freedoms." Cameron v. Johnson, *supra*, 390 U.S. at 619, 88 S.Ct. at 1340, 20 L.Ed.2d 182. Plaintiff has neither admitted nor denied in this action that his conduct was as it is described in the Assembly resolution.

### Bill of Attainder

Plaintiff contends that §§ 13.26 and 13.27 and the Assembly resolution violate the prohibition against bills of attainder set forth in Article I, § 10, clause 1, of the United States Constitution. This contention was also made in plaintiff's petition for habeas corpus in

this court and has been rejected. Groppi v. Leslie, D.C., 311 F.Supp. 772.

In this three-judge case, we are concerned only with plaintiff's challenge to the validity of a threatened second confinement under § 13.27(2), Wis. Stats. We have construed § 13.27(2) to require that he be afforded procedural due process in any criminal action commenced in a state court, including a trial of the underlying issues of fact. Any punishment which might ensue by reason of a judgment of a court cannot be a bill of attainder.

### Separation of Powers

Plaintiff contends that §§ 13.26 and 13.27 and the Assembly resolution violate the principle of separation of powers underlying both the United States and Wisconsin Constitutions.[3] He contends that the statutes and the resolution "purport to sanction the usurpation of the functions of the executive and judicial branches of state government" by the legislature.

We are not concerned here with the power of a state legislature to imprison for contempt, but only with plaintiff's challenge to a threatened second confinement. Because of our construction of § 13.27(2), a second confinement under it could only follow a full trial in a court; thus no usurpation of court functions by the legislature could be involved.

### Double Jeopardy

Plaintiff further contends that by §§ 13.26 and 13.27 and the Assembly resolution, plaintiff may be placed twice in jeopardy for the same alleged offense. Plaintiff was ordered imprisoned by the Assembly for his alleged contempt, and we take notice that he actually spent several days in jail pursuant to the Assembly resolution. A prosecution under § 13.27(2) would be based on the same alleged acts of contempt, and could result in his being fined or imprisoned for up to an additional year.

3. The Wisconsin constitutional question is not for us to decide.

A similar question was raised in In re Chapman, 166 U.S. 661, 17 S.Ct. 677, 41 L.Ed. 1154 (1897). Chapman refused to answer questions propounded by a Congressional investigating committee and was convicted by the District of Columbia Criminal Court under what is now 2 U.S.C. § 192, which provides that refusal to give testimony or produce papers upon a matter under inquiry by a committee is a misdemeanor. Chapman argued that he could be punished for contempt by Congress itself, or under the statute, but that if both Congress and the courts had jurisdiction to punish him, this would constitute double jeopardy. The Supreme Court rejected the argument. It held that Congress had not delegated to the exclusive jurisdiction of the courts its inherent power to punish for contempt. It further stated (166 U.S. at 672, 17 S.Ct. at 681) that

> it is quite clear that the contumacious witness is not subjected to jeopardy twice for the same offense, since the same act may be an offense against one jurisdiction and also an offense against another; and indictable statutory offenses may be punished as such, while the offenders may likewise be subjected to punishment for the same acts as contempts, the two being *diverso intuitu* and capable of standing together.

The theory that a contempt of the legislature may be an offense against two separate jurisdictions was reaffirmed in Jurney v. MacCracken, 294 U.S. 125, 151, 55 S.Ct. 375, 79 L.Ed. 802 (1935). Cf. Yates v. United States, 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957); United States v. Mirra, 220 F.Supp. 361 (S.D.N.Y.1963).

### Thirteenth Amendment

There is no authority for the contention that a confinement in prison constitutes involuntary servitude when it is directed by a judgment of a court of competent jurisdiction following a fair trial.

## ORDER

The hearing herein was noticed on the questions whether a preliminary injunction should be granted, whether jurisdiction is present, and whether the complaint states a claim upon which relief can be granted. However, at the commencement of the hearing, counsel were requested to state that questions of fact required resolution if they believed this to be so, and no such statement was made. It thus appears that no facts are in dispute, so far as this action is concerned. Consequently, the order and judgment we now enter is a final judgment.

Accordingly, it is hereby ordered and adjudged that plaintiff's action is dismissed on its merits.

See also D.C., 311 F.Supp. 765.