**James E. GROPPI, Petitioner-Appellee,**

v.

**Jack LESLIE, Sheriff of Dane County, Respondent-Appellant.**

**No. 18538.**

United States Court of Appeals, Seventh Circuit.

Oct. 28, 1970.

Robert W. Warren, Atty. Gen., David J. Hanson, Sverre O. Tinglum, Asst. Attys. Gen., Madison, Wis., for appellant.

William M. Coffey, Michael J. Zimmer, Milwaukee, Wis., Percy L. Julian, Jr., Madison, Wis., for appellee; Steven H. Steinglass, Patricia D. McMahon, Freedom Through Equality, Inc., Milwaukee, Wis., of counsel.

Before HASTINGS, Senior Circuit Judge, CUMMINGS and PELL, Circuit Judges.

PELL, Circuit Judge.

On October 1, 1969, the Assembly, one of two houses of the Wisconsin state legislature, adopted the following resolution:

"Citing James E. Groppi for contempt of the Assembly and directing his commitment to the Dane county jail.

"In that James E. Groppi led a gathering of people on September 29, 1969, which by its presence on the floor of the Assembly during a meeting of the 1969 regular session of the Wisconsin Legislature in violation of Assembly Rule 10 prevented the Assembly from conducting public business and performing its constitutional duty; now, therefore, be it

"Resolved by the Assembly, That the Assembly finds that the above-cited action by James E. Groppi constituted 'disorderly conduct in the immediate

view of the house and directly tending to interrupt its proceedings' and is an offense punishable as a contempt under Section 13.26(1) (b) of the Wisconsin Statutes and Article IV, Section 8 of the Wisconsin Constitution and therefore:

"(1) Finds James E. Groppi guilty of contempt of the Assembly; and

"(2) In accordance with Sections 13.26 and 13.27 of the Wisconsin Statutes, orders the imprisonment of James E. Groppi for a period of 6 months, or for the duration of the 1969 regular session, whichever is briefer, in the Dane county jail and directs the sheriff of Dane county to seize said person and deliver him to the jailer of the Dane county jail; and, be it further

"Resolved, That the Assembly directs that a copy of this resolution be transmitted to the Dane county district attorney for further action by him under Section 13.27(2) of the Wisconsin Statutes; and, be it further

"Resolved, That the attorney general is respectfully requested to represent the Assembly in any litigation arising herefrom."

Subsequent to the adoption of the Assembly resolution, a copy was served upon Groppi and he was imprisoned in the Dane County Jail upon the authority of said resolution. Prior to being served with a copy of the resolution Groppi was given no specification of the charge against him, had no notice of any kind, nor was any hearing of any kind held. An application for a writ of habeas corpus was dismissed by the Circuit Court for Dane County and thereafter the Wisconsin Supreme Court also denied an application for a writ of habeas corpus and denied a motion for rehearing. State ex rel. Groppi v. Leslie, 44 Wis.2d 282, 171 N.W.2d 192 (1969).

On the same day that the Dane County Circuit Court denied Groppi's petition, a petition for a writ of habeas corpus was filed in the United States District Court for the Western District of Wisconsin. Groppi was admitted to bail by the district court on the day the Wisconsin Supreme Court denied his petition but after he had served ten days of the sentence imposed by the Wisconsin Assembly. On April 8, 1970 the district court held that the legislature could not summarily impose jail sentence for contempt of the legislature without providing the accused with some minimal opportunity to appear and to respond to the charge. The court accordingly granted the writ of habeas corpus, dismissed the respondent Leslie's motion to dismiss, vacated the order releasing Groppi on bail and ordered that he be released from any further custody or restraint pursuant to the resolution of the Assembly. Groppi v. Leslie, 311 F. Supp. 772 (W.D.Wis.1970).

Simultaneously a three-judge district court held constitutional that portion of the Wisconsin Statutes providing for further prosecution after the adjournment of the legislature, being § 13.27(2), Wis.Stat. Groppi v. Froehlich, 311 F. Supp. 765 (W.D.Wis.1970).

An exposition of the development of our law on the power of not only courts but legislatures to punish for contempt is to be found in both the decision of the Wisconsin Supreme Court and of the single-judge district court [1] and no worthwhile purpose will be served by burdening this opinion with a repetition thereof. Suffice it to say that the law as it presently exists is that the legislature as well as the court has the power to punish for contempt and further that where all of the essential elements of the misconduct are under the eye of the court and are actually observed by the court, the judge has the power to impose punishment summarily. The sole issue now before us on this appeal is as stated in the brief filed on behalf of Groppi: "Should the summary power of contempt to imprison a person with-

---

[1]. State ex rel. Groppi v. Leslie, 44 Wis.2d 282, 171 N.W.2d 192 (1969); and Groppi v. Leslie, 311 F.Supp. 772 (W.D.Wis. 1970).

out a notice or hearing be extended to a legislature."

The district court concluded "that such punishment may not be imposed by a legislature without at least providing the accused with some minimal opportunity to appear and to respond to a charge." (311 F.Supp. at p. 777). We disagree.

Groppi contends that there is no historical precedent for the exercise of summary contempt power by the legislature. Insofar as reported court decisions are concerned the contention appears to be correct. Conversely, we have found no reported decisions holding that the legislature does not have summary contempt power. The fact of this apparent lack of authority either way suggests that instances of leading a gathering of people on to the floor of legislative halls and preventing the legislature from conducting public business are extremely rare if not virtually non-existent to this time in the United States.

Groppi further contends that our legislatures have apparently not needed summary contempt powers as they have functioned to date without that power. This assertion rather begs the question as it is not possible to tell whether they have functioned without the power if the need has not heretofore arisen for the use of the power. Whether the legislature does have the power is the issue before us. Whether legislatures in the future will have the need for summary contempt power may well be a *sequela* of the ultimate decision in the case before us.

We cannot be unmindful of recent relatively unprecedented illegal disruptions of the proceedings in courts in our country and this appeal, presenting, as it appears to do, a case of first impression, assumes in our judgment critically significant proportions as to the ability of deliberative legislative bodies to carry on their governmental functions.

While it might be difficult to equate with any degree of equanimity orderly governmental procedures with the effect of the conduct of Groppi as stated in the opinion of the Wisconsin Supreme Court,[2] and while the taking of the law into one's own hands, no matter how worthy the cause might be, is arguably an insecure basis from which to complain of swift and summary punishment, nevertheless, putting aside these considerations we determine the question here involved as a legal issue in a constitutional context. For the purposes of this appeal we are considering only the bare allegations of the Assembly resolution that Groppi led a gathering of people on the floor of the Assembly during a session thereof and prevented the Assembly from conducting a public business. It is on this factual basis we hold that the legislature may properly punish summarily for contempt.

It must also be borne in mind that we have here involved not mere words of incitation but rather deeds and acts of actual physical force.

The court below was of the opinion that the minimal requirements of procedural due process could be provided by the legislature with little delay, presumably referring to a legislative hearing. However, the invasion here involved is not of a committee or subcommitte of the legislature but of the legislative hall it-

2. "On September 29, 1969, during a regular meeting of the Assembly just prior to the commencement of a special session called by the governor, James E. Groppi led a crowd of noisy protesters into the state capitol building and proceeded to 'take over' the Assembly chamber to protest his disagreement with cuts in the state budget for certain welfare programs. The Assembly was unable to proceed with its legislative duties. We take judicial notice that Groppi publicly stated in the Assembly to his cheering supporters, in effect, that they had captured the capitol and intended to stay until they got what they wanted, and that Groppi vowed from the speaker's stand in the Assembly to remain there until the legislature restored funds for welfare recipients. The occupation of the Assembly by Groppi and the protesters lasted from approximately midday to well toward midnight." State ex rel. Groppi v. Leslie, 44 Wis.2d 282, * * *, 171 N.W.2d 192, 194 (1969).

self. Again, we cannot be unmindful of the protracted nature of court proceedings which involve a *cause célèbre.* The courts, notwithstanding occasional difficulties, are essentially designed to devote the necessary time. The legislature is not. Counsel for Groppi conceded during the argument on this appeal that conceivably a full legislative hearing could cause the work of the body to grind to a halt for several weeks. We find such a contemplation intolerable on the American scene.

We agree with that part of the decision of the district court (311 F.Supp. at 780) which disagreed with the declination of the Supreme Court of Wisconsin [3] to draw an analogy between courts and legislatures with respect to the power to punish direct contempt. If the only purpose of the summary contempt power was to remove from the legislative halls persons obstructing legislative activity, this no doubt could be ordinarily expeditiously accomplished by summoning the necessary police. The district court recognized that legislatures do impose sanctions for the purpose of punishing for a past deed, as well as for the purpose of preventing further interference with the legislative function. This is, in our opinion, as it should be. While we recognize that there is some disagreement as to the extent to which punishment is a crime deterrent, we are yet to be convinced that freedom from immediate and summary punishment would be any deterrent to proscribed activities.

In the opinion from which this appeal is taken, the district court adverted (at p. 777) to the possibility of a destruction of the parallel of the legislative situation to the court's summary powers because of the question whether "all of the essential elements of the misconduct" occurred "under the eye of" the members who voted affirmatively October 1 and were "actually observed by those members." In view of the fact that regularly constituted legislative sessions are frequently marked by substantially less than a full attendance on the "floor" by all members of the body, it may be arguable whether the strict standards enunciated in In re Oliver, 333 U.S. 257, 274–275, 68 S.Ct. 499, 508, 92 L.Ed. 682 (1948),[4] need be scrupulously observed or whether it may not be adequate that proceedings were disrupted for those who were in the chamber at the time, that no further proceedings could be had during the continuance of the invasion and that the resolution of punishment be adopted by at least a majority of the body as a whole irrespective of whether each individual member there personally observed the misconduct. We do not need to determine this issue. The question of fact of whether the petitioner's acts on September 29 were observed by a specific member who voted afffirmatively two days later was not timely presented to the state courts of Wisconsin and it would therefore appear that there had not been an exhaustion of remedies available in the courts of this state. 28 U.S.C. § 2254. Further, there is no allegation which would serve to create an issue of fact included in the petition filed in the district court. The issue appears to have been created by the district court's opinion. We do not on this appeal deem it necessary to indulge in a presumption of non-regularity of the Assembly proceedings. United States v. Chemical Foundation, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926); Barry v. United States ex rel. Cunningham, 279 U.S. 597, 619, 49 S.Ct. 452, 73 L.Ed. 867 (1929).

The district court in its opinion, while expressing some skepticism (311 F.Supp. at p. 778) as to the viability, or at least desirability, of the doctrine of summary contempt power insofar as the courts are concerned, nevertheless, accepting the

---

3.  44 Wis.2d at 296, 171 N.W.2d at 198.

4.  "[F]or a court to exercise the extraordinary but narrowly limited power to punish for contempt without adequate notice and opportunity to be heard, the court-disturbing misconduct must not only occur in the court's immediate presence, but * * * the judge must have personal knowledge of it acquired by his own observation of the contemptuous conduct."

court situation as established law, found a basis for differentiating the factual situation presented on the one hand in the courtroom and on the other hand in the legislative chambers. Thus the court felt that the physical contours of most legislatve chambers, the comings and goings of the members and the diffusion of attention of the members among other factors would render it improbable that all the members present would share a uniform perception and evaluation of the incident as would the single judge. The court's conclusion was that the room for error inherent in the response of a large group was so great as to require that it observe some minimal procedures before it invoked its contempt power. However, the matter is not before us on the factual basis of perceptivity of witnesses. It is before us on the basis that James E. Groppi led a gathering of people onto the floor of the Assembly and prevented the Assembly from conducting its business. The Wisconsin Supreme Court made it clear in its decision that factual matters such as erroneous perceptivity would be subject to review in the courts of that state. (171 N.W.2d 192 at p. 198). The court pointed out that Groppi had not sought a hearing in the Wisconsin Supreme Court or any court on the merits of the contempt issue, and that he had not offered any defense nor denied that his acts amounted to a contempt, although the court had allowed him to amend his complaint to present any matter he wished.

As a matter of fact, there is a complete absence in the record before us in the proceedings in the federal district court and in this court on appeal of any denial by Groppi of the contemptuous acts with which he was charged. The sole contention of Groppi is simply that he should not have been summarily punished for the charged contemptuous acts.

■ To the extent that Groppi appears to be urging a jury trial pursuant to Bloom v. Illinois, 391 U.S. 194, 88 S. Ct. 1477, 20 L.Ed.2d 522 (1968), we do not find *Bloom* applicable here as the punishment provided for in the resolu-

tion could not in any event have exceeded six months. Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), Duncan v. Louisiana, 391 U.S. 145, 162 n. 35, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

■ Insofar as Groppi contends that the procedure whereby he was imprisoned constitutes a bill of attainder or a bill of pains and penalties, we agree with the district court on the invalidity of this contention and adopt and approve that portion of the district court's opinion.

The district court in its opinion also expresses the thought that unlike many courts of record, frequently, if not typically, no verbatim written record of legislative proceedings exists. Acts of violent disruption, such as those which have occurred recently in the state courts of California, would seem scarcely to lend themselves to a reporter's transcript any better than would the acts charged against Groppi in the resolution of the Wisconsin Assembly. In any event, a question of what happened factually and whether it is to be determined from a court reporter's transcript or from the mouths of eye witnesses is one which is not determinative of the issue before us. The proof of what happened in the legislative halls will be the same whether the legislature has to have a hearing prior to punishment or whether the hearing is in a court for a review of a claim of lack of factual basis for the punishment.

We share the laudable concern of the district court for the full protection of procedural rights guaranteed to the individual by the due process clause of the Fourteenth Amendment. In essence, however, we have in the case before us a situation in which we must balance claimed constitutional procedural rights of the individual citizen against the welfare of the citizenry as a whole. We find the scales weighted in favor of the citizenry. In so doing we do not feel we are adopting an alarmist view in recognizing validity in the respondent's position that protracted and frequent legislative trials, if necessary, could easily and realistically become a favorite tool in the politics of

confrontation and obstruction, and representative government (whatever its present faults) would go down to defeat.

We reach with some reluctance any decision which appears even remotely to achieve an eroding effect on basic civil liberties as guaranteed by our constitution; but believing, as we do, that illegal and physically forcible interference with properly functioning governmental institutions would pose the real risk of being eventually accompanied by the abolition, rather than the erosion, of the individual constitutional liberties, we are unable to reach any other result in the case before us.

For the reasons hereinbefore indicated, the judgment of the district court is reversed, the petition for habeas corpus is hereby denied and respondent-appellant's motion to dismiss is hereby granted.

Reversed.